IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT NASHVILLE
Assigned on Briefs September 14, 2021

STATE OF TENNESSEE v. JOSE GAUDALUPE FRAUSTO-MAGALLANES

Appeal from the Criminal Court for Davidson County
No. 2019-D-2694    Cheryl A. Blackburn, Judge
_____

No. M2020-01450-CCA-R3-CD
_____

Defendant, Jose Guadalupe Frausto-Magallanes, pled guilty to possession with intent to sell more than fifteen grams of heroin with an agreed sentence length of eight years as a Range I standard offender with the trial court to determine the manner of service. The trial court ordered Defendant to serve his entire eight-year sentence in the Department of Correction. On appeal, Defendant argues that the trial court erred by ordering him to serve his sentence in confinement. Following our review of the entire record and the parties' briefs, we affirm the judgment of the trial court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Criminal Court Affirmed**

JILL BARTEE AYERS, J., delivered the opinion of the court, in which JOHN EVERETT WILLIAMS, P.J., and NORMA MCGEE OGLE, J., joined.

Timothy Carter, Nashville, Tennessee, for the appellant, Jose Guadalupe Frausto-Magallanes.

Herbert H. Slatery III, Attorney General and Reporter; Ruth Anne Thompson, Senior Assistant Attorney General; Glenn R. Funk, District Attorney General; and Mindy Morris, Assistant District Attorney General, for the appellee, State of Tennessee.

**OPINION**

This case arises from surveillance by law enforcement of Defendant and his co-defendant, Kevin Shaw, and execution of a search warrant during which Defendant and

Mr. Shaw were found to be in possession of approximately 2 kilograms (2,000 grams) of heroin and 45 grams of marijuana, along with other items.

## FACTUAL AND PROCEDURAL BACKGROUND

Initially, we point out that Defendant has failed to include in the appellate record the transcript of the guilty plea submission hearing, in which the State would have presented the factual basis for the plea. When a record does not include a transcript of the guilty plea hearing, this court should determine "on a case-by-case basis whether the record is sufficient for a meaningful review under the standard adopted in *State v. Bise*, 380 S.W.3d 682, 708 (Tenn. 2012)." *State v. Caudle*, 388 S.W.3d 273, 279 (Tenn. 2012). We conclude that the testimony and exhibits, including the presentence report, introduced into evidence at the sentencing hearing provide us with sufficient information for appellate review.

A Davidson County grand jury returned an indictment against Defendant charging him with one count of possession with intent to deliver more than 150 grams of heroin, a Class A felony. The following statement of facts, which was gleaned from a case summary as provided by the Metropolitan Nashville Police Department, is contained in the presentence report that was introduced as an exhibit at the sentencing hearing:

> Count 1, possession with intent of heroin over 15 grams[.] "During the month of July 2019, Detective Gbewa Mustapha was contacted by a reliable confidential informant (CI) about an unknown Hispanic male and unknown black males selling heroin. The CI identified one of the black males as Kevin Shaw with a residential address of 1129 Ransom Way. The CI stated that the Hispanic male showed him on his phone of what appeared to be a kilo of heroin for sale for $52,000. The Hispanic male gave a middle man a sample of 2 grams of heroin to give the CI which was turned over to Detective Mustapha. The middle man told the CI that the Hispanic male had 9 kilograms that he wanted to sell. The CI provided the middle man's phone number to Detective Mustapha. Detective Mustapha was then able to confirm the unknown Hispanic male's phone number.
>
> Detectives set up surveillance on 1129 Ransom Way on 07/22/2019. Shaw relayed information to the buyers that he was leaving for work in Green Hills and on the way home. Shaw also stated that the heroin was up the street, and someone was bringing it to him when he got home. GPS surveillance showed that the unknown Hispanic male's phone number tracked to 4161 Apache Trail. The phone number was tracked leaving Apache Trail and traveling to 1129 Ransom Way. Detectives observed Shaw and the Hispanic male coming and

going from the residence. The CI contacted Detective Mustapha a short time later and stated the buy was set up for the next day at 0600 hours.

The CI provided detectives with a photo that showed a kilo of heroin wrapped up on a scale and another kilo on a table. Surveillance units observed the Hispanic male leave the residence in a vehicle registered to Refugia Hervert Hernandez residing at 4161 Apache Trail. Hernandez was followed to that location, and he used a key to enter the residence.

On 07/23/2019 at approximately 0509 hours, Detective Mustapha obtained a search warrant for 1129 Ransom Way. A copy of the search warrant is contained with the case file.

On 07/23/2019 MNPD surveillance units set up on 4161 Apache Trail and 1129 Ransom Way. A Hispanic male later identified as [Defendant] was observed leaving 1129 Apache Trail in a white van and traveling to 1129 Ransom Way. Once at that location [Defendant] exited the van, and he entered the residence. The CI made contact with Detective Mustapha and stated the deal was happening. [Defendant] and Shaw were observed on the porch of the residence, and the take down signal was given, and they were detained.

Recovered pursuant to the execution of the search warrant were approximately 2 kilos of heroin, approximately 45 grams of marijuana, 23 THC vape pens, a digital scale, vacuumed seal bags, 4 cell phones, and $503.00 from the person [Defendant].

Detectives Mirandized Shaw who stated that he was trying to make money so he could buy his kids some school clothes. Shaw stated that the marijuana was his, but the heroin belonged to [Defendant]. Detective[s] Mirandized [Defendant] in Spanish, and he stated that he received heroin from another Hispanic male and was supposed to sell it for $36,000.00 a kilo and bring the money back to the other Hispanic male. Detective Mustapha charged [Defendant] with the above stated offense and he was transported to booking.["]

Defendant pled guilty to possession with intent to sell more than 15 grams of heroin with an agreed sentence of eight years as a Range I standard offender with the trial court to determine the manner of service.

*Sentencing Hearing*

Detective Gbewa Mustapha's testimony at the sentencing hearing was similar to that of the case summary contained in the presentence report. He said that he received information from a CI in July 2019 about some individuals who were trying to sell 2 kilograms of heroin. The CI provided Detective Mustapha with telephone numbers and other information. The CI said that the individuals had a total of 7 kilograms of heroin, but "they wanted to sell these first two off first." The CI provided Detective Mustapha with a sample of the drugs, which field-tested positive for heroin.

Detective Mustapha explained that a "ping order" was obtained for Defendant's phone number, and GPS surveillance revealed that Defendant went from his residence on Apache Trail "to the deal location on the day prior to the deal, which was the - - I believe was the 22nd of July." Detective Mustapha testified that both GPS surveillance and physical surveillance "lined up the pings along with [Defendant] and the vehicle that we believed that he was using." Detective Mustapha further testified: "On the date of the 22nd, we went back and forth about how much it was going to be for the kilo and where it was going to be and when it was going to take place. The discussion was that the kilo was going to be [$]52,000 per kilo." The transaction was supposed to take place the following morning, July 23, 2019.

Detective Mustapha testified that on the morning of July 23, 2019, there was "physical surveillance" at Defendant's residence and at the "deal location." Defendant was observed leaving his residence and traveling by van to the deal location, and he walked inside the residence. At that point, at search warrant was executed at the residence, and officers recovered approximately 1,990 grams of heroin. Detective Mustapha testified that Defendant provided some information about where he obtained the heroin and how he got involved in selling it. He also provided information about his co-defendant's involvement. Detective Mustapha noted that Defendant was the initial "target" of the investigation.

Defendant testified that if released from custody, he would live with Michael Valdez on Apache Trail, and he planned to work for Ricardo Morrales painting and installing drywall. Defendant thought that he could also work a second job through Mr. Valdez who owned a hardwood flooring company. Defendant testified that he had a vehicle and a valid driver's license. He said that he had several cousins who lived in Nashville and owned painting companies, and he had a good relationship with them. Defendant testified that most of his family members lived in Texas, including his three daughters.

Defendant testified that he had been in custody for approximately four months and had completed the New Avenues program. He had also participated in SAVE, a domestic violence program. Defendant said that he participated in the program in order to "be a better person to my family, my daughters, to my community, for myself." Defendant testified that he had high blood pressure, and he took several medications for hypertension

and high cholesterol. He said that the hypertension medication caused some fluid buildup that bothered him. Defendant testified that he tested positive for COVID-19 while in custody, and it was sometimes hard for him to breathe.

Defendant testified that he had completed a drug boot camp program during his previous incarceration. He was released and completed parole but began using cocaine again after approximately three years. Defendant said that he last used drugs on July 22, 2019, the day before his arrest. He indicated that he began selling heroin to support his cocaine addiction. On cross-examination, Defendant testified that he had previously used cocaine, marijuana, and alcohol. He said that he is a legal resident of the United States but that he had an Immigration and Customs Enforcement ("ICE") hold.

The trial court made the following findings at the conclusion of the sentencing hearing and denied Defendant's request for alternative sentencing:

> The problem that [Defendant] has, in addition to the detainer on him, is the fact that not too long ago, which would have been 2008-A-735, he was - - pled guilty and sentenced to 11 years. He didn't - - he didn't make probation. He served the sentence. And the reason I know that is because it looks like - - and he got his diploma while he was in custody at Turney Center. It looks like Turney Center is where he served. So I am not exactly sure when he got out of custody. But that was a large amount of cocaine. And now we have, even though the plea is to a B felony, it's clearly an A weight of heroin, which is extremely dangerous, especially in this community. We have a lot of problems with that.
> So[,] he has already had one opportunity to straighten out his life when he gets out after the cocaine, and then we have him - - even though he was helpful to some extent with the police department, I just cannot in good conscience put him back on an alternative sentence. I mean, this is a huge amount of heroin. And when we are talking about amount of - - the testimony from the detective was that it was going to be - - they were discussing that it was $52,000 per kilo and they had 7 kilos available but they were going to just try 2 kilos. I mean, this is a huge amount of heroin to be selling in this community. So I cannot in good conscience let him have an alternative sentence. And in addition to that, the federal authorities want him for - - and this is a crime of moral turpitude, so the chances of him surviving being placed on some alternative sentence and the Federal Government letting him stay here is pretty slim to none.

It is from this judgment that Defendant now appeals.

**ANALYSIS**

Defendant argues that the trial court erred by failing to follow the sentencing guidelines and denying his request for alternative sentencing and ordering him to serve his full eight-year sentence in confinement. The State asserts that trial court did not abuse its discretion by denying alternative sentencing.

The trial court has broad discretion to impose a sentence anywhere within the applicable range, regardless of the presence or absence of enhancement or mitigating factors, and "sentences should be upheld so long as the statutory purposes and principles, along with any enhancement and mitigating factors, have been properly addressed." *State v. Bise*, 380 S.W.3d 682, 706 (Tenn. 2012). Accordingly, we review a trial court's sentencing determinations under an abuse of discretion standard, "granting a presumption of reasonableness to within-range sentencing decisions that reflect a proper application of the purposes and principles of our Sentencing Act." *Id.* at 707. In *State v. Caudle*, our Supreme Court clarified that the "abuse of discretion standard, accompanied by a presumption of reasonableness, applies to within-range sentences that reflect a decision based upon the purposes and principles of sentencing, including the questions related to probation or any other alternative sentence." 388 S.W.3d 273, 278-79 (Tenn. 2012). Under the Sentencing Act, trial courts are to consider the following factors when determining a defendant's sentence and the appropriate combination of sentencing alternatives:

> (1) The evidence, if any, received at the trial and the sentencing hearing;
> (2) The presentence report;
> (3) The principles of sentencing and arguments as to sentencing alternatives;
> (4) The nature and characteristics of the criminal conduct involved;
> (5) Evidence and information offered by the parties on the mitigating and enhancement factors set out in §§ 40-35-113 and 40-35-114;
> (6) Any statistical information provided by the administrative office of the courts as to sentencing practices for similar offenses in Tennessee; and
> (7) Any statement the defendant wishes to make in the defendant's own behalf about sentencing.
> (8) The result of the validated risk and needs assessment conducted by the department and contained in the presentence report.

T.C.A. § 40-35-210(b).

The trial court must state on the record the factors it considered and the reasons for the ordered sentence. T.C.A. § 40-35-210(e); *Bise*, 380 S.W.3d at 706. "Mere inadequacy in the articulation of the reasons for imposing a particular sentence . . . should not negate

- 6 -

the presumption [of reasonableness]." *Bise*, 380 S.W.3d at 705-06. The party challenging the sentence on appeal bears the burden of establishing that the sentence was improper. T.C.A. § 40-35-401, Sentencing Comm'n Cmts.

Under the revised Tennessee sentencing statutes, a defendant is no longer presumed to be a favorable candidate for probation or any other alternative sentence, including community corrections. *State v. Carter*, 254 S.W.3d 335, 347 (Tenn. 2008) (citing T.C.A. § 40-35-102(6)). Instead, the "advisory" sentencing guidelines provide that a defendant "who is an especially mitigated or standard offender convicted of a Class C, D or E felony, should be considered as a favorable candidate for alternative sentencing options in the absence of evidence to the contrary." T.C.A. § 40-35-102(6). However, no criminal defendant is automatically entitled to probation as a matter of law. *State v. Davis*, 940 S.W.2d 558, 559 (Tenn. 1997). Instead, the defendant bears the burden of proving his or her suitability for alternative sentencing options. *Carter*, 254 S.W.3d at 347 (citing T.C.A. § 40-35-303(b)). The defendant must show that the alternative sentencing option imposed "will subserve the ends of justice and the best interests of both the public and the defendant." *Hooper v. State*, 297 S.W.2d 78, 81 (Tenn. 1956), *overruled on other grounds*, *State v. Hooper*, 29 S.W.3d 1, 9-10 (Tenn. 2000).

When imposing a sentence of full confinement, the trial court should consider whether:

> (A) Confinement is necessary to protect society by restraining a defendant who has a long history of criminal conduct;
> (B) Confinement is necessary to avoid depreciating the seriousness of the offense or confinement is particularly suited to provide an effective deterrence to others likely to commit similar offenses; or
> (C) Measures less restrictive than confinement have frequently or recently been applied unsuccessfully to the defendant [.]

T.C.A. § 40-35-103(1)(A)-(C). In addition, the sentence imposed should be (1) "no greater than that deserved for the offense committed," and (2) "the least severe measure necessary to achieve the purposes for which the sentence is imposed." T.C.A. § 40-35-103(2),(4).

As pointed out by the trial court at the sentencing hearing, Defendant in this case was not eligible for probation and could only be considered for community corrections because he was convicted of possession with intent to sell more than 15 grams of heroin, a Schedule I substance. *See* T.C.A. § 39-17-417 (b). "A defendant shall be eligible for probation . . . if the sentence imposed upon the defendant is ten (10) years or less; however, no defendant shall be eligible for probation under this chapter is convicted of a violation of . . . § 39-17-417(b)[.]" T.C.A. § 40-35-303(a). However, "eligibility for probation is not required for consideration of community corrections." *State v. Johnson*, 342 S.W.3d 520, 523 (Tenn. Crim. App. 2009).

- 7 -

To qualify for consideration for punishment in the community, an offender must meet all of the following criteria:

> (A) Persons who, without this option, would be incarcerated in a correctional institution;
> (B) Persons who are convicted of property-related, or drug-or alcohol-related felony offenses or other felony offenses not involving crimes against the person as provided in title 39, chapter 13, parts 1-5;
> (C) Persons who are convicted of nonviolent felony offenses;
> (D) Persons who are convicted of felony offenses in which the use or possession of a weapon was not involved;
> (E) Persons who do not demonstrate a present or past pattern of behavior indicating violence; and
> (F) Persons who do not demonstrate a pattern of committing violent offenses.

T.C.A. § 40-36-106(a)(1). Under the "special needs" provision of the statute, an offender who does not otherwise meet the criteria above "and who would be usually considered unfit for probation due to histories of chronic alcohol or drug abuse or mental health problems, but whose special needs are treatable and could be served best in the community" may be considered eligible for a community corrections sentence. *Id.* § 40-36-106(c). In making this determination, the trial court must first find that the defendant is eligible for probation. *State v. Grigsby*, 957 S.W.2d 541, 546-47 (Tenn. Crim. App. 1997) (citations omitted).

Because he was convicted of a Class B felony, Defendant in this case was not considered to be a favorable candidate for any form of alternative sentencing, including community corrections. He was also not eligible for community corrections under the "special needs" provision of the statute because he is not eligible for probation.

The record supports the trial court's denial of alternative sentencing. It appears from the record that the trial court denied Defendant's request for alternative sentencing on the fact that Defendant has a long history of criminal conduct, to avoid depreciating the seriousness of the offense, and that measures less restrictive than confinement have frequently or recently been applied unsuccessfully to Defendant. T.C.A. § 40-35-103(A)-(C). Defendant admitted that he has a long history of marijuana and cocaine use, which supports a finding that he has a long history of criminal conduct. Also, as noted above, Defendant was convicted in 2008 for the sale of more than 0.5 grams of cocaine. Although he completed his sentence, including a drug boot camp program, and he completed his parole, Defendant began using drugs again and sold drugs in this case. We note that although Defendant pled guilty to possession with intent to sell more than fifteen grams of

heroin, he was originally charged with possession with intent to deliver more than 150 grams of heroin, which the trial court noted was a huge amount of heroin to be selling in the community. At the sentencing hearing, Detective Mustapha testified that approximately 1,990 grams of heroin were actually recovered during the search of the residence where Defendant was present. Detective Mustapha also testified that the CI had informed him that Defendant and his co-defendant had a total of seven kilograms (7,000 grams) of heroin to sell. A trial court may deny alternative sentencing if it finds that any one of the factors found in Tennessee Code Annotated section 40-35-103 apply. *State v. Christopher Allen*, No. W2016-00505-CCA-R3-CD, 2017 WL 764552, at *4 (Tenn. Crim. App. Feb. 24, 2017); *State v. John Anthony Garrett*, No. E2012-01898-CCA-R3-CD, 2013 WL 5373156, at *4 (Tenn. Crim. App. Sept. 23, 2013).

We conclude that the trial court in this case properly considered the relevant purposes and principles of the sentencing statutes and ordered Defendant to serve his eight-year sentence for possession with intent to sell more than 15 grams of heroin in confinement. Defendant is not entitled to relief on this issue.

## CONCLUSION

Based on the foregoing analysis, we affirm the judgment of the trial court.

_____
JILL BARTEE AYERS, JUDGE